IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**LINDA SMITH,**

    **Plaintiff,**

v.                                                         Case 2:18-cv-02382-cgc

**NISSAN NORTH AMERICA, INC.,**

    **Defendant.**

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S PARTIAL MOTION TO DISMISS**

Before the Court is Defendant Nissan North America, Incorporated's ("Nissan" or "Defendant") Motion to Dismiss Plaintiff's claims for breach of implied warranty and violation of the Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated Section 47-18-104 ("Partial Motion to Dismiss"). (Docket Entry "D.E." #8). The parties have consented to the jurisdiction of the United States Magistrate Judge. (D.E. #13). For the reasons set forth herein, Nissan's Partial Motion to dismiss is hereby GRANTED IN PART AND DENIED IN PART.

### I. Introduction

On April 27, 2018, Plaintiff Linda Smith ("Plaintiff" or "Smith") filed a Complaint against Nissan in the Circuit Court of Shelby County, Tennessee. Nissan removed the case to this Court on June 6, 2018. (D.E. #1).[1] Plaintiff alleges that she purchased a 2014 Nissan

---

[1] Nissan asserts that this Court has federal question jurisdiction over Plaintiff's Magnuson-Moss Act claims under 15 U.S.C. § 2310(d)(1)(B) because Plaintiff seeks more than $50,000.00 in

1

Pathfinder ("Vehicle") on or about January 31, 2014. (Compl. ¶ 1). The Vehicle was accompanied with a factory warranty that provided for a three-year, 36,000 mile bumper-to-bumper warranty and a five-year, 60,000 mile Powertrain warranty ("Warranty"). (*Id*. ¶5). Plaintiff alleges that the Warranty covers "any repairs or replacements needed during the warranty period and/or due to defects in factory materials or workmanship." (*Id*. ¶ 6). However, Plaintiff states that, when the Vehicle was delivered, it was "defective in materials and workmanship" and that the defects were "discovered within the warranty periods and repairs were attempted." (*Id*. ¶¶ 7, 12). Specifically, Plaintiff enumerates thirteen different defects, including as to the transmission, the tow capacity, the starter, the gear shift, the "stop lamp switch," the keys, and the "lack of power." (*Id*.) Plaintiff has also noticed various odors emitted by the vehicle. (*Id*.)

Plaintiff alleges that an Authorized Dealership, Landers Nissan, has test-driven the vehicle and made repairs to it but that the defects continue to exist. (*Id*. ¶¶ 8-9, 11 & Exh. C). Plaintiff alleges that the Vehicle was out of service for repairs under the Warranty for "at least" twenty-one days but that Nissan failed to "bring it into conformity with the warranties set forth herein." (*Id*. ¶¶ 8-9). Plaintiff alleges that these defects have "substantially impaired its use, value and safety" and have "shaken the Plaintiff's faith in the vehicle to operate as dependable transportation." (*Id*. ¶ 10). Ultimately, Plaintiff has advised that she desired a "buy-back" of the Vehicle (*Id*. ¶ 12), which, based upon the further allegations in the Complaint, was apparently denied.

Plaintiff raises four claims based upon these allegations: (1) breach of warranty; (2) breach of the implied warranty of merchantability, Tennessee Code Annotated Section 47-2-314;

---

damages. *See* 15 U.S.C. § 2310(d)(3)(B). Nissan further alleges that this Court has supplemental jurisdiction over Plaintiff's remaining state-law claims under 28 U.S.C. § 1367(a).

(3) breach of the Magnuson-Moss Warranty Act, 15 U.S.C. Section 2301, *et seq*.; and, (4) violation of the Tennessee Consumer Protection Act, Tennessee Code Annotated Section 47-18-104. (*Id*. ¶¶ 16-44). As remedies, Plaintiff seeks to either revoke her acceptance of the Vehicle and be refunded the purchase price along with the expenses she has incurred due to its "non-conformities," or, in the alternative, be awarded damages in the form of all expenses Plaintiff has incurred, including loss of use of the Vehicle, diminution in value of the Vehicle, costs of repair to return the Vehicle to its warranted state, expenses "related to aftermarket items installed," and "damages to Plaintiff's well-being in the form of emotional distress." (*Id*. ¶¶ 14-15).

On June 13, 2018, Nissan filed it Partial Motion to Dismiss asserting that Plaintiff's breach-of-implied-warranty claim and TCPA claim fail to state claims upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. With respect to the breach-of-implied-warranty claim, Nissan states that it fails as a matter of law because Smith is not in privity with Nissan; instead, Nissan argues that Plaintiff is in privity with the dealership, Landers Nissan, based upon the Purchase Agreement she filed as an exhibit to her Complaint. (*See* Compl. ¶ 3 & Exh. C). With respect to the TCPA claim, Nissan asserts that Plaintiff has failed to allege any deceptive act or practice, as enumerated in Tennessee Code Annotated Section 47-18-104(b), that it is alleged to have committed.

Plaintiff responds that her breach-of-implied-warranty claim does not fail as a matter of law because privity with Nissan is not required because she alleges that she suffered more than purely economic damages. Specifically, Plaintiff argues that she requests equitable relief in her Complaint by seeking to revoke her acceptance of the Vehicle. Plaintiff also responds that her TCPA claim does not fail as a matter of law for the following reasons: (1) Nissan committed a

deceptive act by presenting the Vehicle as "meeting a particular standard or quality, when in fact it contained several defects and nonconformities that substantially impaired its use and value" (Pl.'s Resp. to Def's Partial Mot. to Dismiss at 5-6); and, (2) Nissan failed to properly and permanently repair the subject vehicle's defects and nonconformities.

On July 9, 2018, Nissan filed its Reply. Nissan again asserts that Plaintiff may not recover economic damages against it for breach of implied warranty. Nissan also asserts that Plaintiff may not use her Response to effectively amend the allegations contained in her Complaint. Nissan further argues that Plaintiff may not pursue revocation of acceptance against it because that is not an available remedy against a manufacturer and that her claim for "property damages" should be dismissed because the Vehicle did not cause damage to any person or other property. Nissan also argues that Plaintiff's TCPA claim must fail because "Plaintiff does not identify the person or entity who made the alleged misrepresentations."

**II.     Analysis**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In addressing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . .claim is and the grounds upon which it rests." *Id.* (citing *Twombly*, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678-79.

### A. Breach of Implied Warranty

Under Tennessee law, "a plaintiff may not maintain a claim for purely economic losses absent contractual privity with the party charged with responsibility for those losses." *Messer Greisheim Indus. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003). However, the Tennessee legislature has further provided that, "[i]n all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty . . . privity shall not be a requirement to maintain such an action." Tenn. Code Ann. § 29-34-104. Thus, the issue here is whether Plaintiff's Complaint alleges "purely economic

5

losses" with a contractual remedy or "property damage brought on account of . . . breach of [implied] warranty" with a remedy in tort.

In *Lincoln General Insurance Company v. Detroit Diesel Corporation*, 293 S.W.3d 487 (2009), the Tennessee Supreme Court considered this issue in answering a certified question from the United States District Court for the Middle District of Tennessee. The *Lincoln* court noted that this case presented it with the "first opportunity to examine the proper application of the economic loss doctrine when only the defective product is damaged." *Id.* at 489.

Initially, the *Lincoln* Court explained that the "economic loss doctrine" is a "judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss." *Id*. at 488 (citation omitted). It further stated that the "economic loss doctrine is implicated in products liability cases when a defective product damages itself without causing personal injury or damage to other property." *Id*. at 489. "In this context, 'economic loss' is defined generally as 'the diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.'" *Id*. (citation omitted). "Two types of economic loss, direct and consequential, occur when a defective product is damaged." *Id*. (citation omitted). "Direct economic loss may be measured by the defective product's cost of repair or replacement"; "[c]onsequential economic losses, such as lost profits, result from the product owner's inability to use the product." *Id*. (citation omitted).

Although certain products-liability cases addressing the economic-loss doctrine involve particularly calamitous occurrences, such as fires or crashes, *see East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 868 (1986), the *Lincoln* court noted that the owner of

6

a defective product "that malfunctions and simply does not work" is in the same position with respect to his or her ability to use the product, *Lincoln*, 293 S.W.3d at 491 & at 492 (citing *Progressive Ins. Co. v. Gen. Motors Corp.*, 749 N.E.2d 484, 488 ("A product's self-destruction is naturally understood as 'economic loss' because it is 'indistinguishable in consequence from the product's simple failure to function.'"). In the context of more calamitous events, the United States Supreme Court "chose a bright-line rule that precludes recovery in tort when a product damages itself without causing personal injury or damage to other property." *Lincoln*, 293 S.W.3d at 489. Thus, "[i]t follows that the remedies available to these similarly situated product owners [in less calamitous cases of product defects] should derive from the parties' agreements, not from the law of torts, lest we disrupt the parties' allocation of risk." *Id.* at 491; *see Prosser & Keeton on the Law of Torts* § 101(3), at 709 ("[R]isk of harm to the product itself due to the condition of the product would seem to be a type of risk that the parties to a purchase and sale contract should be allowed to allocate pursuant to the terms of the contract.") "To hold otherwise would make it more difficult for parties to predict the consequences of their business transactions . . . ." *Lincoln*, 293 S.W.3d at 491 (citing *E. River S.S. Corp.*, 476 U.S. at 872). The *Lincoln* court noted, however, that existing law continues to permit "tort recovery for personal injury and damage to property other than the product itself." *Lincoln*, 293 S.W.3d at 491.

Upon review, in Plaintiff's claim for breach of implied warranty, she alleges as follows: "As a result of Defendant's breach of implied warranties, Plaintiff has and will continue to suffer *significant monetary damages*." (See Compl. ¶ 27). Thus, Plaintiff's claim for breach of implied warranty "respectfully requests that this Honorable Court enter Judgment in favor of Plaintiff and against Defendant in an amount to be determined at the Trial of the matter, but believed to

be *monetary* relief in of $100,000.00 or less, exclusive of costs, interest and attorney fees." (*Id*.) As such, Plaintiff's claim for breach of implied warranty must fail as it seeks purely economic damages that should be determined in contract rather than tort. As Nissan correctly asserts (and Plaintiff has not challenged), her Complaint and the exhibits thereto do not contain any assertion that she has contractual privity with it to pursue such a claim. Further, although Plaintiff's Complaint generally states that she seeks damages to her "well-being in the form of emotional distress," (*see* Compl. ¶ 15), and that she wishes to revoke her acceptance of the Vehicle, which she defines as a request for equitable, non-economic relief (*see* Compl. ¶ 14; Pl.'s Resp. to Def's Partial Motion to Dismiss at 4-5), her Complaint clearly raises only economic damages in relation to her breach-of-implied-warranty claim.

Additionally, as to Plaintiff's claim that she seeks both economic *and* equitable relief, Nissan asserts that she may not seek revocation of acceptance against the manufacturer of the product. Specifically, under Tennessee Code Annotated Section 47-2-608, which sets forth the guidelines and requirements for a buyer to revoke acceptance of a purchased product, only the terms "buyer" and "seller" are used. *See id.* The Tennessee Court of Appeals considered this Section in answering the precise question before this Court—"whether a buyer of an allegedly defective car may pursue the remedy of revocation of acceptance against the automobile distributor." *Watts v. Mercedes-Benz USA, LLC*, 254 S.W.3d 422, 425 (2007). In answer to this question, the *Watts* court looked at Section 47-2-608 and reasoned that "[b]oth this statute and its comments exclusively use the terms 'buyer' and 'seller', suggesting that revocation of acceptance requires a "buyer-seller relationship." *Id*. Further, the *Watts* court determined that "[a] review of the statutory authorities and the application of common-sense reasoning persuades

us that the buyer may only pursue a revocation of acceptance against the seller, not a distributor who did not transfer title and to whom no purchase price was ever paid." *Id*. As Nissan is not the seller of the Vehicle, *see* Compl. Exh. C, Plaintiff is not entitled to the equitable relief of revocation of acceptance against it.[2] Accordingly, Plaintiff's claim breach of implied warranty must fail as a matter of law for failure to state a claim which may be granted pursuant to Rule 12(b)(6). Therefore, Defendant's Partial Motion to Dismiss Plaintiff's breach of implied warranty claim is hereby GRANTED.

### B. TCPA

Under the TCPA, certain enumerated "unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part." Tenn. Code Ann. § 47-18-104(b). Fifty-two specific "unfair or deceptive acts or practices" are listed therein. *Id*. § 47-18-104(b)(1)-(52).

Upon review, Plaintiff's Complaint does not expressly cite any of the enumerated violations of Section 47-18-104(b); instead, Plaintiff generally states that Nissan "engaged in a deceptive trade practice" by "representing that goods or services are of a particular standard, quality, or grade . . . if they are of another." (Compl. ¶¶ 40-41). Although not cited, this allegation is a verbatim recitation of Section 47-18-104(b)(7), which provides that "[r]epresenting that goods or services are of a particular standard, quality or grade . . . if they are another" is an unfair or deceptive act or practice that is unlawful.

In addition to the above TCPA allegation, Plaintiff further claims as follows: (1) that the "Vehicle was represented by Defendant to be of good quality" but "had many serious defects and

---

[2] The Court finds that this result is appropriate even though Plaintiff attempts to characterize Nissan is "a warrantor, seller, and merchant of goods" in her Response to the instant motion; on the contrary, Plaintiff's Complaint and Exhibit A thereto demonstrate that the seller of the Vehicle was Landers Nissan.

nonconformities and was in fact of poor quality" (*Id.* ¶ 42); that Nissan led her to "believe that the Vehicle had been repaired and was free of nonconformities" but that, in reality, that it "continued to have defects and nonconformities and had to be returned for repairs on multiple occasions." (*Id.* ¶ 43); and, (3) that Nissan led her to "believe that the work on the Vehicle had cured it of its nonconformities when in fact the work performed did not render it free of nonconformities." (*Id.* ¶ 44). Although Nissan argues that, "[a]t best, Plaintiff alleges that [it] knowingly sold a defective motor vehicle to Plaintiff," which it contends does not "establish a TCPA violation," the Court concludes that Plaintiff has adequately alleged a violation of Section 47-18-104(b), which covers exactly such an allegation.

Finally, although Plaintiff alleges that the sale of the Vehicle and the repairs thereof were completed by Landers Nissan, not Defendant, (*see* Compl. at Exh. A), "privity of contract is not required to sustain an action under the TCPA." *Rostis N. Timoshchuk v. Long of Chattanooga Mercedes-Benz*, No. E2008-01562-COA-R3-CV, 2009 WL 3230961, at *9 (Tenn. Ct. App. Oct. 8, 2009) (citing *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 915 (Tenn. Ct. App. 2000)). Accordingly, Plaintiff's TCPA claim successfully states a claim upon which relief may be granted. Thus, Defendant's Partial Motion to Dismiss the TCPA claim is DENIED.

### III.     Conclusion

For the reasons set forth herein, Defendant's Partial Motion to Dismiss Plaintiff's breach-of-implied-warranty claim is GRANTED and Defendant's Partial Motion to Dismiss Plaintiff's TCPA claim is DENIED.  Thus, the remaining claims before the Court are Plaintiff's breach of warranty claim, Magnuson-Moss Act claim, and TCPA claim.

IT IS SO ORDERED this 27th day of September, 2018.

                                                  s/Charmiane G. Claxton
                                                  CHARMIANE G. CLAXTON
                                                  UNITED STATES MAGISTRATE JUDGE